United States Court of Appeals

For the Eighth Circuit

_____

No. 13-3627

_____

Roderick Nunley

*Petitioner - Appellant*

v.

Michael S. Bowersox

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 14, 2015
Filed: April 27, 2015

_____

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Roderick Nunley pled guilty in Missouri state court to the kidnapping, rape, and murder of a fifteen year old girl named Ann Harrison. After Nunley waived his right to jury sentencing, the state court sentenced him to death. He now brings this 28 U.S.C. § 2254 action alleging that the state denied his constitutionally protected liberty interest in the right to capital jury sentencing as articulated in Ring v. Arizona, 536 U.S. 584 (2002), and later applied retroactively under Missouri law by State v.

Whitfield, 107 S.W.3d 253 (Mo. 2003) (en banc). The district court[1] denied Nunley's petition, and we affirm.

In January 1991, Nunley pled guilty in a Missouri court to kidnapping, raping, and murdering Ann Harrison. The state court sentenced Nunley to death, and shortly thereafter he filed a post conviction motion attempting to withdraw his guilty plea and alleging that his sentencing judge had been drinking prior to the sentencing proceeding. Nunley's motion to withdraw his plea was denied. He then appealed to the Missouri Supreme Court. That court entered a summary order "vacating the judgment and remanding for a new penalty hearing, imposition of sentence and entry of new judgment," but it did not "reverse the plea" or order "a new plea hearing." State v. Nunley, 923 S.W.2d 911, 916 (Mo. 1996) (en banc). On remand, Nunley moved to withdraw his guilty plea and requested jury sentencing. The state trial court denied his motion and again sentenced Nunley to death. The Missouri Supreme Court affirmed, reasoning that Nunley had "waived his right to trial by jury when he pleaded guilty" and had "testified at his plea hearing he understood he had a right to a jury trial and he was waiving the right." Id. at 923.

Nunley filed a § 2254 petition in April 2000 challenging his conviction. He alleged that the state court had violated his constitutional rights when it denied his motion to withdraw his guilty plea and his request for jury sentencing. During the pendency of Nunley's federal habeas petition, the United States Supreme Court issued its decision in Ring that the Sixth Amendment gives defendants the right to have a jury "find an aggravating circumstance necessary for imposition of the death penalty." 536 U.S. at 609. Nunley then supplemented his § 2254 petition to include a claim under Ring. A short time later the Supreme Court decided that Ring did not apply to cases that were "already final on direct review." Schriro v. Summerlin, 542 U.S. 348,

_____

[1] The Honorable Fernando J. Gaitan, United States District Judge for the Western District of Missouri.

358 (2004). Nunley then argued in his § 2254 petition that the Missouri Supreme Court had applied Ring retroactively as a matter of state law in Whitfield, see 107 S.W.3d at 268–69, thereby entitling him to capital jury sentencing even though his case was already final on direct review. We denied Nunley's petition, ruling that the state law "issue he raises" should be "addressed in the first instance—if at all—by a state court." Nunley v. Bowersox, 394 F.3d 1079, 1081 (8th Cir. 2005).

Thereafter, the Missouri Supreme Court set Nunley's execution date for October 20, 2010, and Nunley moved to recall the mandate. He argued that his sentence violated Ring because a judge had made the factual findings which supported the "aggravating circumstance necessary for imposition of the death penalty." See 536 U.S. at 609. He again argued that Whitfield had applied Ring retroactively as a matter of Missouri law. See 107 S.W.3d at 268–69. The state supreme court denied his motion, reasoning that Nunley had waived his right to jury sentencing when he made the strategic decision to plead guilty. See State v. Nunley, 341 S.W.3d 611, 621 (Mo. 2011) (en banc).

Nunley then filed a supplemental habeas petition in federal court arguing that Whitfield had guaranteed his right to have a jury find the aggravating circumstance necessary for imposition of the death penalty, and the supreme court's refusal to grant his request for jury sentencing thus deprived him of a "liberty interest" secured by the Fourteenth Amendment. See Hicks v. Oklahoma, 447 U.S. 343, 346 (1980). The federal district court denied his petition. We later granted a certificate of appealability on whether Nunley had a liberty interest in the retroactive application of Ring and on whether the state supreme court had unreasonably applied Hicks or made an unreasonable determination of the facts in light of the state court record.

We review legal issues presented in a habeas petition "de novo, but we review any underlying factual findings for clear error." Baranski v. United States, 515 F.3d 857, 859 (8th Cir. 2008). The "focus of our inquiry is whether the state supreme court

-3-

acted contrary to or unreasonably applied clearly established federal law." Losh v. Fabian, 592 F.3d 820, 823 (8th Cir. 2010). In § 2254 proceedings, a "federal court may not re-examine a state court's interpretation and application of state law." Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994).

Nunley argues that he has a liberty interest in capital jury sentencing because Whitfield applied Ring retroactively in Missouri. See Whitfield, 107 S.W.3d at 268–69. He asserts that if "a State has provided for the imposition of criminal punishment in the discretion of the trial jury," a defendant in such a case has a liberty interest that the "Fourteenth Amendment preserves against arbitrary deprivation by the state." Hicks, 447 U.S. at 346 (citation omitted). Nunley contends that the Missouri Supreme Court unreasonably applied clearly established federal law under Hicks by refusing to recognize his right to jury sentencing.

The record indicates, however, that Nunley unequivocally waived his right to jury sentencing when he pled guilty. At that time the state trial court informed Nunley that by entering a guilty plea, he was giving up his constitutional right to trial by jury and his right to jury sentencing. Nunley acknowledged these warnings and waived his rights. He has since admitted that he made a strategic choice to waive jury sentencing because he believed a court was less likely to be inflamed by the details of his crime than a jury. After the trial court sentenced him to death, Nunley changed his tactics and moved to withdraw his plea. Although the state supreme court later vacated the trial court's judgment and remanded "for a new penalty hearing, imposition of sentence and entry of new judgment," it did not "reverse the plea" or order "a new plea hearing." Nunley, 923 S.W.2d at 916, 919. Nunley's guilty plea and waiver of jury sentencing thus remained in effect on remand, and he has not established that the state supreme court unreasonably applied clearly established federal law by denying his motion to withdraw his plea. See Losh, 592 F.3d at 823.

-4-

Nunley argues that his waiver was not knowing or voluntary because at the time he pled guilty, capital defendants had "no recognized right" to have a jury find the aggravating circumstance necessary for imposition of the death penalty. See Halbert v. Michigan, 545 U.S. 605, 623 (2005). Nunley nevertheless has no recognized federal right under Ring given that the Supreme Court did not make that decision retroactive. See Schriro, 542 U.S. at 358. State law offers him no additional relief. The Missouri Supreme Court has explained that Whitfield only applies to cases in which a judge imposed the death penalty after a jury deadlocked over a defendant's sentence; it does not apply to defendants "who strategically pled guilty to avoid jury sentencing." Nunley, 341 S.W.3d at 622 (citing Whitfield, 107 S.W.3d at 261–62). We "may not re-examine a state court's interpretation and application of state law" in deciding a § 2254 petition, and Nunley's argument under Whitfield thus fails. See Schleeper, 36 F.3d at 737.

Nunley also challenges the constitutionality of the statutory scheme under which he was convicted, asserting that it violated Ring and Apprendi v. New Jersey, 530 U.S. 466 (2000). The relevant Missouri statute provided that no "defendant who pleads guilty to a homicide offense . . . shall be permitted a trial by jury on the issue of punishment to be imposed, except by agreement of the state." Mo. Stat. § 565.006 (1991). Nunley nevertheless cites two supreme court opinions from other states which held that statutes linking a guilty plea to an automatic waiver of jury sentencing violate Ring. See People v. Montour, 157 P.3d 489, 499 (Colo. 2007) (en banc); State v. Piper, 709 N.W.2d 783, 803 (S.D. 2006).

The Missouri Supreme Court rejected Nunley's challenge to Mo. Stat. § 565.006, and its conclusion was not an "unreasonable application of clearly established federal law." See Losh, 592 F.3d at 823. We have stated that "in the habeas corpus context, the objective reasonableness of a state court's application of Supreme Court precedent may be established if our sister circuits have similarly applied the precedent." Colvin v. Taylor, 324 F.3d 583, 588 (8th Cir. 2003). The

Fourth Circuit has concluded, as did the Missouri Supreme Court, that "neither Apprendi nor Ring holds that a defendant who pleads guilty to capital murder and waives a jury trial under the state's capital sentencing scheme retains a constitutional right to have a jury determine aggravating factors." Lewis v. Wheeler, 609 F.3d 291, 309 (4th Cir. 2010). The Fourth Circuit's interpretation of Ring indicates that "fairminded jurists could disagree" with Nunley's challenge to Missouri's plea statute, and thus the state supreme court's conclusion was not an unreasonable application of clearly established federal law. See Armstrong v. Hobbs, 698 F.3d 1063, 1066 (8th Cir. 2012).

Finally, Nunley argues that the state supreme court made an "unreasonable determination of the facts in light of the evidence presented in the state court" by concluding that he had waived his right to jury sentencing. See Davis v. Norris, 423 F.3d 868, 881 (8th Cir. 2005). Nunley contends that he revoked his waiver by requesting a jury for his second sentencing proceeding after remand and that the state supreme court's conclusion to the contrary was unreasonable. The record establishes, however, that the Missouri Supreme Court had only remanded the case for a new penalty hearing. See Nunley, 923 S.W.2d at 916. The court never reversed the plea or ordered a new plea hearing. Id. Given that Nunley's waiver was still in effect when he attempted to adopt a new strategy and requested jury sentencing at his second capital penalty proceeding, the state supreme court did not make an unreasonable factual determination in light of the evidence presented. See Davis, 423 F.3d at 881.

For these reasons we affirm the judgment of the district court.

_____